(282 P.3d 618)
No. 106,201

CoreFirst Bank & Trust, f/k/a Commerce Bank & Trust, *Plaintiff*, v. JHawker Capital, LLC; James David Alexander, and Linda Alexander, *Defendants*.

Outwest Investments, LLC, *Intervenor*; and James David Alexander, *Third-party Plaintiffs/Appellants*, and Linda Alexander, *Third-party Plaintiff*, v. Junction City Abstract & Title Company, Inc., *Appellee*.

—

756

Opinion filed June 15, 2012.

*Terry A. Iles*, of Law Office of Terry A. Iles, of Topeka, for appellants.

*Brian T. Goldstein, John M. Waldeck*, and *Caleb M. Kirwan*, of Waldeck, Matteuzzi & Sloan, P.C., of Leawood, for appellee.

Before STANDRIDGE, P.J., MARQUARDT and ARNOLD-BURGER, JJ.

MARQUARDT, J.: A mortgage foreclosure action was filed by CoreFirst Bank & Trust against JHawker Capital, LLC (JHawker) on property in a Junction City subdivision development commonly referred to as Mann's Ranch. CoreFirst named Linda and James David Alexander (the Alexanders) as defendants in the foreclosure action because of their interests claimed in the Affidavit of Equitable Interest (affidavit) in the real estate recorded with the register of deeds in Geary County on April 2, 2007. The journal entry granting the mortgage foreclosure was entered on November 4, 2009. That judgment is not at issue here, except to the extent that CoreFirst was granted a first priority lien against the real estate.

While the foreclosure action was pending, on August 13, 2009, the Alexanders and Outwest Investments, LLC (Outwest) filed a third-party petition against Junction City Abstract & Title Co., Inc. (JCAT). In the third-party petition, the Alexanders and Outwest alleged that JCAT was liable for failing to include a restriction on the warranty deeds. The warranty deeds had the Affidavit of Equitable Interest attached. We note that David signed the deed on behalf of Outwest on March 13, 2007. Both Alexanders signed the Affidavit of Equitable Interest on March 28, 2007; the signatures on both of these documents were notarized. The deed and affidavit were filed with the register of deeds in Geary County on April 2, 2007. There was no restriction listed on the warranty deeds.

The Alexanders and Outwest filed their third-party petition, alleging that JCAT had a duty to include their restrictive covenant on the deeds it prepared. David signed the warranty deed JCAT prepared on behalf of Outwest. The Affidavit of Equitable Interest attached to the warranty deed was signed by David and Linda Alexander. It is obvious from these transactions that all the parties involved were sophisticated business people. Did the Alexanders read the deed and affidavit before signing them? It is obvious that there was no restriction recited on the deed. At the time, did the

Alexanders deem the Affidavit of Equitable Interest was sufficient to protect their interests? If the Alexanders and Outwest wanted a restriction on the deed to protect their interests, why did David sign the deed without the restriction?

On March 21, 2011 the Geary County District Court filed a journal entry granting summary judgment to JCAT and denying the claims of the Alexanders and Outwest. The court held that the retained interests the third-party plaintiffs claim were transfer fee covenants, and our legislature has statutorily deemed that these covenants are void, unenforceable, and against public policy under K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822. The court also rejected arguments that the transfer fees fit within the exceptions to the rule for real estate commissions or additional consideration. Thus, JCAT could not be liable for failing to adequately protect an unenforceable interest. Second, the court denied the claims for damages for future lost profits, finding them too speculative and remote. David Alexander and Outwest challenge both decisions on appeal.

This appeal involves the claims of the Alexanders and Outwest, a real estate business in which David is the managing member. The Alexanders' and Outwest's second amended third-party petition against JCAT claimed: (1) professional malpractice and breach of fiduciary duty; (2) breach of contract; and (3) negligence in preparing real estate documents. The Alexanders and Outwest claim that JCAT failed to adequately protect the Alexanders' and Outwest's retained interests in the property as reflected in the contracts between Outwest (and other sellers) and the buyers, JHawker and Southboro, LLC.

The Alexanders and Outwest claimed that their contracts provided that when each of the 174 lots in Mann's Ranch was fully developed with a home and was sold, the buyers would either (1) ensure that the Alexanders were the exclusive listing agents with a 5.5% commission or (2) pay Outwest a commission or fee of $2,500 regardless of whether the buyers still owned the lots at such time. The Alexanders and Outwest claim that JCAT, who prepared the deed for the transfer of the real property, is responsible for the district court's finding that their security interests were inferior to

CoreFirst's mortgage lien and that their interests were extinguished in the foreclosure action.

CONTRACT TERMS

There were two contracts for the sale of the 174 lots that were essentially identical in their terms except for the names of the buyers, legal descriptions, number of lots to be platted, and calculation of the sale price. Each included the following provisions that are key to arguments raised in this appeal:

- The parties were identified as:

  "Seller" (of both tracts): Alexander Land Investments, LLC; Thomas-Locke Development, LLC; Outwest Investments, LLC; and SBSL, LLC;
  "Buyer" of Tract 1 (Phase I): Southboro, LLC;
  "Buyer" of Tract 2 (Phase II): JHawker Capital, LLC.

  - "1.0 **RECITALS**. . . . Seller acquired for development purposes a tract of land in Geary County, Kansas, commonly known as the 'Mann's Ranch' with the intent of subdividing and developing it into a total of [92 and 82] residential lots to be sold at a wholesale price of $15,000 per lot and give David Alexander and Linda Alexander an exclusive listing agreement respecting the sale of completed structures for a commission of 5½% of the gross sale price."

  - "3.0 **PURCHASE PRICE**. . . .

    . . . .

    "3.2 The purchase price for Tract One is $1,380,000 [and for Tract Two is $1,230,000] at $15,000 per lot based upon the final plat on file at the time of closing."

  - "6.0 **RETAINED INTEREST TO REAL ESTATE PROTECTED BY AFFIDAVIT OF EQUITABLE INTEREST.**

    "If Buyer should elect not to use David Alexander or Linda Alexander as a real estate agent as described above, then the Buyer shall pay to Outwest Investments, LLC, a commission/fee of $2,500.00 at the time of the closing of each First Conveyance of each lot. For the purpose of this Agreement, 'First Conveyance' shall be defined as the first sale and conveyance of the lot or lots on which an improved house/residence has been constructed, regardless of who may own the lot or who might have constructed the dwelling at the time of such closing. The mere transfer of a vacant lot shall not obligate Buyer to pay the commission of $2,500.00, but such obligation to pay Outwest Investments, LLC, $2,500.00 shall arise upon the sale of a constructed dwell-

ing or when a mortgage is filed securing the permanent financing of a dwelling, whichever first shall occur.

"6.1 Real Estate Commission Fees. It is disclosed by the Seller that David Alexander is a duly licensed real estate agent in the State of Kansas. As part of the consideration for this transaction, Buyer agrees that he/it will list all properties for sale through David Alexander and Linda Alexander as listing agents for the real estate brokerage firm for which they are associated. That David Alexander and Linda Alexander will cause said properties to be listed for a five and one-half percent (5½) fee based upon the selling price of the property with improvements that will be constructed, be the same a single family residence or a duplex. That David Alexander and Linda Alexander will cause said properties to be listed using MLS. This provision wherein David Alexander and Linda Alexander will be the exclusive listing agents for the foregoing lots being developed by the Buyer or his successors, heirs or assigns, shall run with the land and shall be released on a lot by lot basis by David Alexander and Linda Alexander after closing the first sale to a third party. The provisions of this paragraph shall survive the closing of this transaction.

"In the event the buyer should elect not to used David and/or Linda Alexander as the real estate agents as described above, then the Buyer agrees to pay to the Seller a commission/fee of Two Thousand Five Hundred Dollars ($2,500.00) 'sales price' at the time [of] the first sale or conveyance of said property after improvements have been constructed. It is contemplated by the parties hereto that the first transaction shall be defined as the sale and conveyance of said property that contains an improved house/residence/duplex and not the mere transfer of the vacant lot.

*"The parties agree and understand that said agreement will be recited on a deed restriction that will be filed of record at the time of closing that will serve as a restriction on said property.* [Emphasis added.]

"6.2 Further, Buyer shall obligate any future purchaser or transferee of any of the unimproved lots in Tract One to honor the Buyer's obligations under any listing agreement which Buyer may choose to sign with David Alexander and Linda Alexander as set forth herein respecting new homes which may be constructed on the lots. The parties acknowledge and agree that they intend that David Alexander and Linda Alexander be a third-party beneficiaries [*sic*] of this real estate contract; and accordingly, David Alexander and Linda Alexander shall be entitled to enforce the performance of Buyer's obligations the listing provision hereof directly against Buyer.

"6.3 Buyer will execute and deliver to David Alexander and Linda Alexander an exclusive Right-To-Sell Listing Agreement as designated or mutually acceptable real estate broker whom Alexander may select, a copy of which is appended to this contract as Exhibit 'A', which shall expire on the first day of the sixth month after Junction City has issued its certificate of occupancy respecting any residential structure which may be constructed on the lot."

- "15.0 **PRIOR AGREEMENTS**. This Contract represents the entire agreement between the parties as to the real estate, and any and all other agreements previously entered into by the parties regarding the sale of the real estate are superseded by this Contract and of no further force or effect."

## SUMMARY JUDGMENT

JCAT moved for summary judgment, arguing that it could not be liable for not including the retained interest as a deed restriction because retained interests are considered transfer fee covenants that the Kansas Legislature has declared void and unenforceable and against public policy under K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822. The district court denied that motion as premature pending discovery.

JCAT again moved for summary judgment. After an extensive response from the Alexanders and Outwest and a reply by JCAT, the district court held a hearing at which the parties presented arguments.

By agreement at the beginning of the hearing, the parties informed the court that Linda Alexander's claims were being dismissed because she was not a licensed real estate agent. The district court dismissed her claims for lack of standing. That decision is not appealed.

The district court granted JCAT summary judgment on all remaining third-party claims. First, construing the terms of the contracts within their four corners, the court concluded as a matter of law that the proposed deed restrictions constituted a transfer fee that the Kansas Legislature has declared void against public policy and unenforceable under K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822. The court also concluded that the statutory exceptions to the rule under K.S.A. 2011 Supp. 58-3821(a)(2)(A) and (B) were inapplicable. Thus, the Alexanders and Outwest could not establish they were damaged by JCAT's failure to include the unenforceable transfer fee restrictions on the deeds. Alternatively, the court ruled that the damages sought by third-party plaintiffs were too speculative and remote to permit recovery under any theory. David and Outwest (collectively referred to as appellants) appeal the district court's decision.

Appeal

In their first argument on appeal, appellants do not dispute the district court's conclusion that the interests underlying their claims against JCAT were "transfer fee covenants." Instead, they argue that the district court erred in not concluding their contractually retained interests fit within either of the statutory exceptions barring transfer fees found in K.S.A. 2011 Supp. 58-3821(a)(2)(A) and (B). JCAT responds that the district court properly concluded the exceptions were inapplicable, albeit for different reasons.

An appellate court's standard for reviewing the district court's summary judgment is well known:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. [Appellate courts] apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]

"To the extent there is no factual dispute, appellate review of an order granting summary judgment is unlimited. [Citation omitted.]" *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 750-51, 207 P.3d 231 (2009).

## Legal Effect of a Written Contract

The district court's summary judgment is reviewed based on its interpretation of the contracts, as well as K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822. Issues involving the interpretation and legal effect of a written contract, as well as statutory interpretation, involve questions of law subject to unlimited review by this court without deference to the district court's interpretations. See *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009) (contract interpretation and legal effect of written contract).

As the Kansas Supreme Court has explained in discussing a court's role in interpreting contracts:

"The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction. [Citation omitted.] Interpreting a written contract that is free from ambiguity is a judicial function and does not require oral testimony to determine the contract's meaning. Ambiguity in a contract does not appear until two or more meanings can be construed from the contract provisions. [Citation omitted.]" *Carrothers Constr.*, 288 Kan. at 751.

Courts cannot isolate one particular sentence or provision when interpreting a contract but instead must construe and consider the entire contract in harmony where possible. *City of Arkansas City v. Bruton*, 284 Kan. 815, 832-33, 166 P.3d 992 (2007).

Before addressing the parties' arguments on appeal, it should be noted that appellants have included in their briefs what they deem to be additional relevant facts about the parties' intent and the circumstances leading up to the appellants' sale of Mann's Ranch. These facts, which were included in their response to JCAT's motion for summary judgment, relate primarily to their contentions that they sold the property for less than it was worth only because of they had a retained interest in the property.

The district court found these facts were immaterial because the contracts were unambiguous. The court limited its decision to consideration of the contracts. Even though the appellants maintain that the contract is unambiguous and must be enforced according to its terms, they ask this court to consider evidence of their intent at the time of signing of the contracts. They cannot have it both ways.

JCAT suggests that some of the contract terms are conflicting on the damages issue but does not otherwise contend that the contracts were ambiguous or require consideration of parol evidence. See *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452, 827 P.2d 24 (1992) (noting general rule that parol evidence is inadmissible to contradict, alter, or vary terms of written instrument unless ambiguity exists on vital point such that parol evidence is necessary to ascertain parties' intent in executing instrument). Compare *Duncan v. Essary*, 193 Kan. 241, 245, 392 P.2d 877 (1964) (noting that parol evidence is always admissible to

prove that deed absolute in form was in fact equitable mortgage to secure payment of debt).

The contract clearly stated: "This Contract represents the entire agreement between the parties as to the real estate, and any and all other agreements previously entered into by the parties regarding the sale of the real estate are superseded by this Contract and of no further force or effect." When a contract clearly states that it represents the parties' entire agreement and any and all other agreements previously entered into by the parties regarding the sale of the real estate are superseded by this contract and of no further force or effect, parol evidence on the issue is not admissible.

Because the parties do not point to any ambiguity in the contracts and the contracts state that prior agreements have "no further force or effect," this court will not go outside of the four corners of the contracts to resolve the issues on appeal.

We also note that appellants' reply to JCAT's motion for summary judgment cites to the initial summary judgment pleadings filed in this case as support for their additional factual contentions. In a footnote to their brief, appellants state that this is appropriate because JCAT's reply to their response in those initial summary judgment proceedings did not comply with Supreme Court Rule 141 (2011 Kan. Ct. R. Annot. 232), so by operation of that rule, JCAT was deemed to have admitted their uncontroverted factual contentions.

The summary judgment pleadings cited as support for appellants' additional factual contentions were filed in a separate summary judgment proceeding. Nothing in Rule 141 provides—and no authority was found to support the appellants' suggestion—that facts deemed uncontroverted in a separate summary judgment proceeding are binding on the parties in another summary judgment proceeding. We find that the factual contentions in one summary judgment proceeding are not binding on the parties in a subsequent summary judgment proceeding. Thus, they lack support and are not relied upon by this court in reaching its decision.

*Application of K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). A rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. See *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). When a statute is plain and unambiguous, courts will not speculate as to the legislative intent and will not read something into the statute that is not readily found in it. The canons of construction or legislative history will not be consulted to construe legislative intent. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822 dealing with transfer fee covenants were passed by our legislature in 2009. K.S.A. 2011 Supp. 58-3822 states, in pertinent part:

"(a) On and after the effective date of this act, any transfer fee covenant, as defined in K.S.A. 2011 Supp. 58-3821 . . . is hereby declared to be against public policy and such covenant shall be void and unenforceable.

"(b) The provisions of this section shall apply to any transfer fee covenant in existence on the effective date of this act."

K.S.A. 2011 Supp. 58-3821 is titled "Transfer fee covenant; definitions; not enforceable" and states:

"(a) As used in this section:

"(1) 'Transfer' means the sale, gift, conveyance, assignment, inheritance or other transfer of an ownership interest in real property located in this state;

"(2) 'transfer fee' means a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer. The following shall not be considered a 'transfer fee' for the purposes of this section:

(A) Any consideration *payable by the grantee to the grantor* for the interest in real property being transferred, including any subsequent additional consideration for the property payable by the grantee based upon any subsequent appreciation, development or sale of the property;

(B) any commission payable to an individual licensed by the state as a real estate salesperson or broker for the transfer of real property pursuant to an agreement between the grantor or grantee and the real estate salesperson or broker, including

any subsequent additional *commission payable by the grantor or the grantee* based upon any subsequent appreciation, development or sale of the property;

. . . .

" (3) 'transfer fee covenant' means a declaration or covenant purporting to affect real property that requires or purports to require the payment of a transfer fee to the declarant or other person specified in the declaration or covenant or to their successors or assigns, upon a subsequent transfer of an interest in the real property.

"(b) Any transfer fee covenant recorded in this state on or after July 1, 2009, shall not run with the title to real property and is not binding or enforceable at law or in equity against any subsequent owner, purchaser or mortgagee of any interest in real property as an equitable servitude or otherwise." (Emphasis added.) K.S.A. 2011 Supp. 58-3821.

Based on the plain language of the statutes and their legislative history, the district court found that the "transfer fee after the fact" interests at issue in this case were just the type of transfer fee covenants our legislature intended to prohibit in enacting K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822. Neither party challenges this conclusion. Rather, appellants' arguments on appeal focus only on whether these interests fit within the exceptions to statutorily barred transfer fees as enumerated in K.S.A. 2011 Supp. 58-3821(a)(2)(A) or (B).

Both the House and Senate Committees that considered and passed House Bill 2092 (as amended) in 2009 received unopposed testimony and written remarks in support of the bill. In reaching its decision, the district court presumably consulted the background of the legislation as summarized in a supplemental note on House Bill 2092 prepared by the Legislative Research Department, which JCAT attached as an exhibit to its motion for summary judgment. Although the supplemental note cautions that it "does not express legislative intent," independent research confirmed that it aptly summarizes the legislative history of House Bill 2092 as follows:

"The bill was introduced by the House Committee on Financial Institutions at the request of the Kansas Association of Realtors whose representative indicated that a private transfer fee covenant is essentially a sophisticated extortion scheme that robs the homeowner of the equity in his or her home by holding clear and marketable title to the property hostage. The representative also noted that in other states where this practice is more prevalent, mortgage lenders and title

insurance agencies are not willing to participate in transactions where the title is affected by a private transfer fee covenant. The Kansas Land Title Association representative stated that the bill will eliminate clouds on titles and claims and litigation many years down the road, based on a seller's attempt to maintain a residuary interest in future sales. Written testimony in support of the bill was provided by the Kansas Bankers Association. There were no opponents present at the time of the Committee hearing.

"The House Committee on Financial Institutions recommended an amendment to include fees associated with typical real estate closings among the exclusions to the term, 'transfer fee.' The amendment was requested by the Kansas Association of Realtors. Additionally, the Committee recommended an amendment that would apply to transfer fee covenants in existence on the effective date of the act (publication in statute) to declare the covenants as void and unenforceable." H.B. 2092, Supp. Note, p. 2 (2009).

Appellants first argue that the district court erred in not concluding their retained interest, which they allege should have been a restriction on the warranty deed JCAT prepared, fits within the exception for real estate commissions found in K.S.A. 2011 Supp. 58-3821(a)(2)(B). The exception provides that the following shall not be considered a transfer fee:

"[A]ny commission [1] *payable to an individual licensed by the state as a real estate salesperson or broker* for the transfer of real property [2] *pursuant to an agreement between the grantor or grantee and the real estate salesperson or broker,* including any subsequent additional commission payable by the grantor or the grantee based upon any subsequent appreciation, development or sale of the property." (Emphasis added.) K.S.A. 2011 Supp. 58-3821(a)(2)(B).

Before addressing the parties' arguments, we consider the district court's conclusion that this exception was inapplicable.

First, the district court questioned whether David or Outwest was the proper party to assert the right to an exclusive listing. More specifically, the district court expressed concerns in its oral ruling about the fact that the exclusive right to sell—executed in accordance with Section 6.3 of the contracts—named Coldwell Banker as the broker that was granted the exclusive listing right, not David or Outwest. However, Coldwell Banker was not a party to the contracts or the third-party lawsuit. Appellants' counsel informed the court that this was because David worked for Coldwell Banker at the time, and only a broker can maintain an exclusive listing agreement under Kansas law. Counsel further indicated that pursuant

to an agreement between David and Coldwell Banker, these were his listings which he rightfully took with him when he left the agency. The court decided the applicability of the real estate commission with David holding the exclusive listing rights, and JCAT has not cross-appealed from that decision or otherwise challenged it.

Next, the district court found it remarkable that sections 6.0 through 6.3 appeared under a general heading titled "**RETAINED INTEREST TO REAL ESTATE PROTECTED BY AFFIDAVIT OF EQUITABLE INTEREST**." The court found the heading demonstrates that this is exactly the type of transfer fee the Kansas legislation was enacted to prevent.

Finally, the district court found that the real estate commission exception was inapplicable because the transfer fee covenants in the contracts provided that if the Alexanders were not the exclusive listing agents, they would not receive the 5.5% commission fee, and the buyers were then required to pay a commission of $2,500 to Outwest. In short, the district court concluded this exception could not apply because Outwest was not a licensed real estate agent in Kansas, which is a prerequisite for a transfer fee to fit within the plain language of any statutory exception allowing transfer fees for real estate commissions.

Appellants contend the district court too narrowly defined the parties' intent in entering the contracts and, consequently, its decision was "misguided." In support, they argue that the first requirement of the statute is met because it is undisputed that David is a licensed real estate agent in Kansas. They maintain that Sections 1.0 and 6.0 of both contracts clearly gave David an exclusive listing agreement for the sale of developed lots at Mann's Ranch as part of the consideration for the transaction. Appellants acknowledge that the contracts also provided that Outwest was entitled to a commission or fee, but they maintain that would happen *only* if the buyers elected not to use David as the real estate agent. Accordingly, they contend that the district court again too narrowly construed the contracts to provide that both David *and* Outwest were entitled to recover commissions on future sales.

Interestingly, JCAT does not address this separate conclusion by the district court that the exception cannot apply because Outwest was not a licensed real estate agent. Instead, JCAT's response in support of the court's conclusion that this exception was inapplicable focuses on two arguments.

First, JCAT responds that the exception allowing transfer fees for real estate commissions is inapplicable under the facts because the Alexanders and Outwest were grantors. In support, JCAT suggests that a careful reading of K.S.A. 2011 Supp. 58-3821(a)(2)(B) demonstrates that the exception for real estate commissions applies solely to independent realtors who are not otherwise involved in the transaction. According to JCAT, because David was not acting as a real estate agent but rather in his capacity as a grantor/seller of the property through his companies, any pecuniary benefit he would receive from the future sale of an unimproved lot cannot, as a matter of law, be considered "commissions" for his work as a real estate agent back in 2006.

Second, JCAT argues that the $2,500 payment that the buyer is obligated to make to Outwest in the event that David is not the exclusive listing agent, is a liquidated damage or penalty provision, not a real estate commission contemplated under the exception in K.S.A. 2011 Supp. 58-3821(a)(2)(B). In support, JCAT argues the $2,500 bears no relation to the sale or sale proceeds

In their reply brief, appellants insist that this court must reject JCAT's narrow interpretation of the transfer fee exception for real estate commissions under K.S.A. 2011 Supp. 58-3821(a)(2)(B). Even if this court accepts that narrow interpretation, they contend that David is not a grantor but rather a third-party beneficiary under the real estate contracts. Thus, *his* retained interest would meet the real estate commission exception given his agreement with the buyers (apparently referring to the exclusive listing agreement between JHawker and Coldwell Banker). Appellants rely on a law dictionary definition of "grantor" and point out that David is not named as a grantor or seller in the real estate transaction. Rather, the grantors/sellers were four limited liability companies, which are separate entities from their principals.

Importantly, neither party cites to any authority for their competing contentions about whether, as a principal of two of the limited liability companies named as sellers in the contracts, David could not be deemed the grantor. See *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) (recognizing that simply pressing a point on appeal without citation to pertinent authority or without showing why it is sound despite lack of supporting authority, is akin to failing to brief an issue, which results in the issue being deemed waived or abandoned).

Appellants further dispute JCAT's classification of the $2,500 payment to Outwest as a penalty or liquidated damage. Instead, they assert that the plain language of the contracts state that the $2,500 is for a commission/fee, which they classify as "simply additional consideration." That argument seems to relate to the separate, additional-consideration exception barring transfer fees.

If the contracts would have included only the retained interests of David in the exclusive listing agreement, this might have been a closer case requiring this court to resolve the parties' various arguments. But that is not the case. The plain language of the contracts alternatively granted either the Alexanders or Outwest future commissions upon the sales of the individual, fully developed lots, and the election between those alternatives was left up to the buyers (JHawker) or the other buyers. Accordingly, the two cannot be separated as appellants. The district court appears to have found, in pertinent part, that the interests of the Alexanders and Outwest were inseparable and could not, therefore, fall within the real estate commission exception to bar transfer fee covenants. We agree.

Appellants next argue that the district court erroneously concluded their retained interests did not fall within the statutory transfer fee exception for additional consideration. To reiterate, the exception at issue here provides that transfer fees are not legislatively barred if they are for:

"Any consideration payable by the grantee to the grantor for the interest in real property being transferred, including any subsequent additional consideration for the property payable by the grantee based upon any subsequent appreciation, development or sale of the property." K.S.A. 2011 Supp. 58-3821(a)(2)(A).

The court concluded that the only contract provisions that governed the consideration are found in sections 3.0 through 3.2, titled **"PURCHASE PRICE."** Because those provisions clearly stated that the purchase price was $15,000 per lot without any indication that "it was to be paid for X amount, and they're paying this amount in cash, and the remainder being paid on the back end"—*i.e.* there is nothing to indicate that David's exclusive listing for the 5.5% commission or the $2,500 per lot payment to Outwest was considered in the purchase price. Therefore, the exception for transfer fees for additional consideration was inapplicable.

Appellants assert that the district court's conclusions amount to a strained and misguided interpretation of the contracts and this statutory exception. In support of their argument that this exception (in addition to that for real estate commissions) applies, they first highlight the fact that this exception is for *any* consideration, including *any* additional consideration payable based upon the subsequent sale of the property. They then point to the broad definitions of "consideration" under Kansas law. For example, in *Kannaday v. Ball*, 44 Kan. App. 2d 65, 72, 236 P.3d 826 (2010), *rev. denied* 291 Kan. 911 (2011), this court stated that "[c]onsideration may be any legal benefit or detriment." And in *Woods, Executor v. McQueen*, 195 Kan. 380, 383, 404 P.2d 955 (1965), our Supreme Court noted that the applicable rule (as then stated in 17 Am. Jur. 2d, Contracts, pp. 438-39) is as follows:

" 'It is widely held that a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract. The terms "benefit" and "detriment" are thus used in a legal or technical sense and have no necessary reference to material advantage or disadvantage to the parties, or to any actual pecuniary gain or loss.' "

The appellants argue that the district court erred in looking only at the purchase price section of the contracts rather than the entire documents to determine whether they were to receive *any* additional consideration; yet they do not cite to any provisions of the contracts in support of their argument. Instead, they reiterate additional factual contentions concerning their underlying negotiations that led to the contracts and argue the district court should have considered the contract provisions coupled with their intent as gleaned from those negotiations.

As noted above, additional facts were relied upon and not supported by proper record citations because they were based on non-binding prior summary judgment proceedings, but they wholly disregard both the district court's valid conclusion that the unambiguous contracts must be construed within their four corners and section 15.0 of the contracts. That section, as quoted above, clearly states that the contracts represent the parties' entire agreement and any and all other agreements leading up to the contracts are superseded and of no further force or effect.

Finally, appellants argue that the real estate commissions payable to David and the commissions/fees payable to Outwest would constitute consideration for the real estate transactions because those obligations were a legal benefit to appellants and a detriment to the buyers. While this may be true of the requirement that the buyers pay Outwest $2,500, it is difficult to discern how the exclusive listing agreement would be a detriment to the buyers. It also seems that the district court was correct to conclude that those sections of the contracts do not pertain to consideration.

For these reasons, we reject appellants' arguments and conclude the district court did not err in holding the statutory exception allowing transfer fees for additional consideration was inapplicable here.

Accordingly, because the appellants were not the sole grantors, the payments due to the Alexanders or Outwest alone cannot be considered "subsequent additional consideration" to the "grantor" for the sale. With this decision, we need not consider JCAT's alternative contention that the contract terms and deposition testimony offered to support their arguments in favor of summary judgment indicate that appellants have already received full compensation for Mann's Ranch from the buyers, so their retained interests cannot be deemed "additional consideration."

## DAMAGES

Appellants contend the district court erred in concluding their damages are too speculative. They argue that their damages resulting from JCAT's failure to close the Mann's Ranch real estate

transactions in strict conformance with the contracts can be determined based upon a simple mathematical formula.

JCAT offers four alternative arguments in response, but none seem to actually reach the merits of the district court's ruling on the damages issue.

First, JCAT maintains appellants cannot establish any damages because if it had included the restriction on the warranty deed, such restriction would have been deemed void and unenforceable pursuant to K.S.A. 2011 Supp. 58-3821 and K.S.A. 2011 Supp. 58-3822. Thus, appellants would not be able to establish that any of the theories on which they based JCAT's liability resulted in any compensable damages. But this argument does not address the district court's conclusions concerning the speculative nature of the damages sought by appellants.

Second, JCAT contends that David's deposition testimony and other discovery responses confirm that, to date, appellants have not suffered any compensable damages because David has been retained as the listing agent and received a 5.5% commission on each of the five improved lots that have been sold. This argument ignores appellants' request for damages for lost *future* profits.

Third, JCAT contends there is no causal link between the absence of a deed restriction and David not being retained as the exclusive listing agent or Outwest not being paid $2,500 upon the sale of each lot. Causation and damages are two distinct issues.

Fourth, and finally, JCAT maintains that the contract provisions providing David a right to an exclusive listing agreement were wholly gratuitous and did not result from a meeting of the minds between the sellers and the buyers. Appellants reply by citing to evidence in the record suggesting the contrary. If anything, this argument advanced by JCAT demonstrates only that there might be a question of fact on this issue, but that is not a material question of fact relevant to the question of whether the *damages* element of appellants' claims is speculative and too remote.

Unfortunately, the district court did not elaborate on the basis for its conclusion that the damages sought by appellants were speculative and too remote to survive summary judgment. The court did note that it had contemplated and did not know how it would

instruct the jury when the damages are unknown as of yet. The court further commented that it "[d]oesn't take a rocket [scientist] to figure out JHawker has gone bell [*sic*] up," which "certainly indicates there might be" damages.

This court reviews the district court's grant of summary judgment under this alternative ground under the same standard set forth in the issue above.

Appellants seek damages from JCAT for loss of future profits— David for $1,588,620, and Outwest for $422,500.

In Kansas, "loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably be considered to have been within the contemplation of the parties." *Vickers v. Wichita State University*, 213 Kan. 614, 618, 518 P.2d 512 (1974). The evidence necessary or sufficient to establish lost future profits with reasonable certainty depends largely on the circumstances of the case. While absolute certainty in proving loss of future profits is not required, a damages award for lost profits cannot be based upon purely speculative or problematic evidence. Rather, there must be some reasonable standard by which to guide the court or jury tasked with determining damages. 213 Kan. at 620 (citing Note, *Requirements of Certainty of Proof of Lost Profits*, 64 Harv. L. Rev. 317, 139 (1950); McCormick, Law of Damages, § 29 [1935]).

As appellants point out, "speculative damages" are defined as "[p]rospective or anticipated damages from the same acts or facts constituting the present cause of action, but which depend upon future developments which are contingent, conjectural, or improbable." Black's Law Dictionary 392 (6th ed. 1990).

Appellants argue on appeal that their request for damages for future lost profits does not meet this definition of speculative damages because there is a reasonable standard for determining their damages resulting from JCAT's failure to include their interests in a deed restriction. More specifically, appellants maintain the following facts were overlooked or improperly disregarded by the district court:

- Mann's Ranch continues to be developed, and based upon the five sales of lots that have already occurred in the Mann's Ranch subdivision, David anticipates that any developed lot will sell for an average of $174,000.
- JCAT's expert (Bill Lansdowne) opined that all lots on Mann's Ranch will eventually be sold, and based on his retrospective opinion of market value, the average sales of developed lots would range between $125,000 and $175,000.

According to appellants, David's damages can be computed based on these facts by applying a simple mathematical formula:

166 remaining lots × $174,000 average sales price = $28,884,000; and, $28,884,000 × 5.5% commission = $1,588,620.

Appellants do not offer such a formula for Outwest's lost profits, but the $422,500 figure they use does not seem to fit their reasoning because 166 lots × $2,500 = $415,000. Also, if David received a commission, then Outwest would not.

We conclude that appellants' arguments actually demonstrate that the district court was correct in finding their damages too speculative or remote. The development of Mann's Ranch began in 2006. Six years later, only five homes have been built and sold, leaving 166 lots unsold. While there may have been some evidence that two more lots were being developed, there is nothing in the record to indicate that those homes will sell for the $174,000 average the other five homes sold for or that additional lots will be developed with homes at that same price in the reasonably foreseeable future.

Accordingly, we conclude that the district court did not err in granting JCAT summary judgment on the alternative ground that appellants' claimed damages for future lost profits depend upon future developments that are contingent, conjectural, and improbable, *i.e.*, are speculative and not reasonably ascertainable.

Affirmed.