NOT DESIGNATED FOR PUBLICATION

No. 117,176

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREAT AMERICAN INSURANCE COMPANY,
*Appellant*,

v.

ROSS WAHL,
*Appellee*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Opinion filed November 3, 2017. Affirmed.

*Fred J. Logan, Jr.* and *Andrew V. Logan*, of Logan Logan & Watson, L.C., of Prairie Village, for appellant.

*P. Bernard Irvine*, of Morrison, Frost, Olsen, Irvine & Schartz, LLP, of Manhattan, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM: We are called upon to decide how a crop insurance policy issued by Great American Insurance Company (Great American) to its policyholder, Ross Wahl, should be interpreted. Great American withheld insurance proceeds on its current policy claiming it had overpaid Wahl in previous policy years for crop losses as a new producer when he did not qualify as a new producer. The district court found for Wahl and granted judgment for $10,818 plus reinstatement of his eligibility for Federal Crop Insurance. We affirm.

1

FACTS

In 2009, Wahl purchased crop insurance from Great American as a new producer of wheat. In 2011, he purchased crop insurance from Great American as a new producer of soybeans. Wahl suffered a crop loss in both years and Great American paid the claims.

In 2012, Great American notified Wahl it overpaid his claims because he did not qualify as a new producer in either 2009 or 2011. Great American applied the $10,818 owed on the 2012 crop loss policy claim to the overpaid balance and indicated Wahl still owed a total of $9,238.

On October 22, 2015, Great American filed a limited action claim for $9,238 for the outstanding overpayment. Wahl answered and counterclaimed for $10,818 for breach of contract and conversion. The district court converted the case from a Chapter 61 to a Chapter 60 civil case.

Upon completing discovery, Wahl moved for partial summary judgment. He argued the Kansas statute of limitations barred recovery for the overpayment of the 2009 claim. Great American responded, contending federal law preempted the Kansas statute of limitations. At the hearing on the motion for summary judgment, Great American indicated it did not believe there was an applicable statute of limitations. The district court found Kansas' five-year statute of limitations barred Great America's claim for overpayment for crop year 2009.

Before trial, Great American filed a motion in limine requesting the district court exclude any evidence Wahl attempted to introduce at trial. The motion argued Wahl was barred from presenting any evidence because he failed to request arbitration within one year of the date of Great American's final determination the crop insurance had been overpaid. The district court denied the motion.

At trial, Great American's Divisional Assistant Vice-President of Claims, Mark Splettstaszer, testified Great American administered multiple peril crop insurance for the Federal Crop Insurance Corporation of the Department of Agriculture (FCIC). He testified the Risk Management Agency (RMA) had determined Wahl did not actually qualify for new producer status because he was part of a corporation that had previously produced soybeans. He testified Great American notified Wahl there was an overpayment multiple times in 2012 and 2013. Splettstaszer testified Wahl never sought arbitration of its determination.

Great American asked Splettstaszer about the RMA's final agency determination, and Splettstaszer replied, in part: "It's RMA's responsibility and it's their authority to interpret the policy and only they can interpret the policy, nobody else. So that's what those final agency determinations do." Great American sought to introduce RMA's final agency determination FAD-245, and Wahl objected. He argued it was a collateral issue and was not relevant. Great American responded:

> "(Inaudible) [I]t's up to Your Honor to decide the interpretation (inaudible) the official document showing what their latest Risk Management Agency determination of that arbitration is, and the Court can decide whether it applies or not has (inaudible) while the evidence comes in."

The district court admitted FAD-245 but noted the admission did not mean the district court accepted arbitration as binding.

During his cross-examination of Splettstaszer, Wahl admitted nine exhibits without objection. After Great American rested, Wahl took the stand—without objection—in his defense. Great American did not object to any of Wahl's testimony or the exhibits he admitted.

3

The district court found Great American waived the arbitration requirement when it filed the lawsuit. The district court also found Wahl was a new producer of soybeans in 2011 and Great American did not overpay on Wahl's 2011 claim. The district court denied Great American's claim against Wahl and granted his counterclaim for $10,818.

Great American timely appealed.

## ANALYSIS

"Congress enacted the [Federal Crop Insurance Act, 7 U.S.C. 1501 et seq. (the Act)] in 1938 'to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance.' 7 U.S.C. § 1502 (1994). Under the original scheme of the FCIA, only the [Federal Crop Insurance Corporation (FCIC)] issued crop insurance policies and processed claims based on those policies. When the FCIA was amended, Congress authorized the FCIC to utilize private insurance companies in providing crop insurance to the nation's farmers. 7 U.S.C. § 1508(a). Currently, the FCIC insures farmers directly and reinsures private companies that insure farmers. *Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Serv., Inc.,* 121 F.3d 630, 634 (11th Cir.1997)." *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 549-50 (8th Cir. 2004).

*Kansas' statute of limitations is not preempted by federal law.*

On appeal, Great American argues the Federal Crop Insurance Act, 7 U.S.C. § 1501 (2012) et seq. (the Act), its related regulations, and the crop insurance policy preempt conflicting state law. Wahl notes Great American failed to identify how the district court erred in any of its rulings. Great American's reply brief likewise fails to identify any specific rulings.

4

A review of the record suggests Great American may be arguing the district court erred when it applied Kansas' statute of limitations and granted Wahl's partial motion for summary judgment. Great American only raised preemption in its response to summary judgment and during argument on that motion.

Wahl asserts Great American failed to present any authority to the district court. Throughout the pendency of this case, Great American only cited to *Boyle v. Harries*, 22 Kan. App. 2d 686, 923 P.2d 504 (1996), a case which is inapplicable to the issues here. He contends Great American failed to properly preserve its issues for appeal. However, Great American's response to the motion for partial summary judgment stated: "Federal law preempts state law in the area of [Multi-Peril Crop Insurance]." At argument on the motion, Great American also argued federal—not state—law governed the statute of limitations. While Great American did not cite any authority regarding preemption, it clearly raised the issue below and preserved it for appellate review.

Assuming Great American is challenging the application of Kansas' statute of limitations—and notwithstanding Wahl's arguments, which are more applicable to Great American's other issues on appeal—Great American is not entitled to relief. This court exercises unlimited review over questions of whether federal preemption applies. *Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 96, 109-10, 363 P.3d 1115 (2015).

> "The doctrine of federal preemption is founded in the Supremacy Clause of the United States Constitution:
>
> > "'This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' U.S. Const. art. VI, paragraph 2.

5

"Simply put, the Supremacy Clause invalidates state laws that interfere with, or are contrary to, federal law. Application of this well-recognized interpretation of the Supremacy Clause has led to recognition that federal law may supersede state law in several different ways, and in turn this recognition has led to the use of several analytical categories. See *Doty v. Frontier Communications, Inc.,* 272 Kan. 880, 889, 36 P.3d 250 (2001).

"Broadly speaking, a preemption analysis divides into two principal categories: express and implied preemption. Implied preemption is further divided into two analytical subcategories: field preemption and conflict preemption. Then, yet a third strata of analytical subcategories is used when examining claims of conflict preemption: per se conflict and obstacle preemption. [Citations omitted.]" *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011).

Here, the question is whether conflict preemption applies. 7 U.S.C. § 1506(l) (2012) states, in relevant part:

"State and local laws or rules shall not apply to [crop insurance] contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations."

Similarly, 7 C.F.R. § 457.8 § 31, p. 164 (2017), states: "If the provisions of this [FCIC] policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy." From the plain language of the statute and the policy, it is clear both Congress and the FCIC only intended to preempt *conflicting* state laws.

Section 20(b)(3) of the regulation acts as a statute of limitations for insureds to bring their claims. (All references to section 20 refer to 7 C.F.R. § 457.8 (For Reinsured [FCIC] Policies) § 20, p. 159 [2017]). It provides: "If arbitration has been initiated in

6

accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered." However, this provision is inapplicable because the insured never initiated arbitration.

On appeal, Great American does not point to any applicable federal statute of limitations and was unable to identify an applicable federal statute of limitations when questioned by the district court. At argument on the motion for partial summary judgment, Great American stated:

"I can not find any [applicable statute of limitations]. And no one seems to know of any. And what they do say is that this is governed by federal law and not state law. And I can kind of just—in reasoning it out, I can see where if state law governed . . . their farmers would be covered in different ways because . . . different states have different laws and that would not make uniform treatment for the program."

The crop insurance policy, statutes, and regulations preempt conflicting state law. Great American has not shown—and we have not been able to find—an applicable federal statute of limitations. Furthermore, Great American has not argued the Act's silence regarding a statute of limitations somehow conflicts with state law. At oral argument, Great American did argue the statute of limitations was the one-year limit placed on policyholders to initiate arbitration. The issue was not briefed. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Since there is no conflicting federal statute, the district court did not err when it applied Kansas' five-year statute of limitations as to the crop policy issued for 2009.

*A contemporaneous objection to the admission of evidence was required for Great American to preserve its claim over Wahl's failure to timely seek arbitration.*

Great American's brief is unclear, but it appears to argue Wahl should not have been able to challenge its determination when he failed to timely initiate arbitration. Both

7

parties agree this court has unlimited review because it involves questions of law, such as the interpretation of contracts and statutes. See *CoreFirst Bank & Trust v. JHawker Capital*, 47 Kan. App. 2d 755, 762, 282 P.3d 618 (2012). Great American argues it preserved this issue by raising it in its argument on Wahl's partial motion for summary judgment and in its motion in limine. Specifically, Great American's motion in limine sought to prevent Wahl from admitting any evidence at trial.

Generally, any pretrial objection to the admission of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012); but see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (characterizing contemporaneous-objection rule as a "prudential rather than jurisdictional obstacle to appellate review"). Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous-objection rule in some contexts upon finding the underlying purpose for the rule has been satisfied. See, e.g., *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013); *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012); *State v. Breedlove*, 295 Kan. 481, 490-91, 286 P.3d 1123 (2012).

Great American did not preserve this issue because it failed to contemporaneously object to any of Wahl's evidence. Wahl admitted nine exhibits, without objection, during his cross-examination of Great American's own witness. Great American did not object when Wahl took the stand or to any of his testimony. Great American allowed Wahl to admit an exhibit during his testimony without objection. The only real objection came from Wahl when he objected to Great American's request during its direct examination of its witness, asking to introduce FAD-245—which states the one-year limitation for filing arbitration begins to run on the date an insurance provider denies a claim. Wahl argued FAD-245 was irrelevant to the issues at hand, and Great American's counsel replied:

"(Inaudible) [I]t's up to Your Honor to decide the interpretation (inaudible) the official document showing what their latest Risk Management Agency determination of that arbitration is, and the Court can decide whether it applies or not has (inaudible) while the evidence comes in."

The district court replied it would admit FAD-245, but that did not mean it accepted arbitration as binding.

Though it seems to argue Wahl should not have been able to present evidence since he did not file for arbitration, Great American did not contemporaneously object to the admission of Wahl's evidence and exhibits admitted through Great America's own witness and through Wahl's testimony. Great American failed to preserve this issue for appeal.

*Neither party nor the district court requested an interpretation of the policy from FCIC.*

Great American argues the district court erred in interpreting the insurance policy because, pursuant to federal law, it had to follow the FCIC's interpretations. Wahl contends Great American did not raise this issue below. Great American asserts it raised this issue below, citing to a portion of the trial transcript. Great American's assertion is unpersuasive.

At trial, during direct examination, Great American's counsel asked its representative, Mark Splettstaszer, about final agency determinations. Splettstaszer answered, in part:

"The final agency determination process is a vehicle that the Risk Management Agency has made available to anybody that wants an interpretation of the policy, specifically the policy that the government writes. An individual could request it, an attorney could request it, a company could request it. And so Great American did not request that specific one, but the net effect or the—of all of these final agency determinations is that

9

they have the ruling of law. *It's RMA's responsibility and it's their authority to interpret the policy, and only they can interpret the policy, nobody else.* So that's what those final agency determinations do." (Emphasis added.)

Great American never argued the district court lacked authority to interpret the policy, nor did Great American ever object to the district court's interpretation of the policy. The only mention occurred during a witness' testimony, did not include a citation to authority, and was not expanded upon by Great American.

Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who fail to comply with this rule risk a ruling the issue is improperly briefed, and the issue will be deemed waived or abandoned. Thereafter, the Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Great American did not raise the issue below and has not complied with Supreme Court Rule 6.02(a)(5). Since Rule 6.02(a)(5) is to be strictly enforced, Great American has improperly briefed the issue and we find it waived or abandoned.

Wahl has also filed a motion for attorney fees pursuant to Kansas Supreme Court Rule 7.07 (2017 Kan. S. Ct. R. 50). We deny his request as the insurance policy at issue herein specifically denies Wahl the right to reimbursement of his attorney fees.

Affirmed.