NOT DESIGNATED FOR PUBLICATION

No. 117,112

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONALD D. HENDRIX,
BDOE OF CHESTERFIELD, INC.,
BDOE, INC., and
BD75, INC.,
*Appellants/Cross-appellees*,

v.

JIM SHERIDAN,
UES, LLC,
SFCC-OLATHE, INC., and
SHERIDAN'S FRANCHISE SYSTEMS, INC.,
*Appellees/Cross-appellants*.

MEMORANDUM OPINION

Appeal from Johnson District Court; GERALD T. ELLIOTT, judge. Opinion filed May 18, 2018. Affirmed in part and modified in part.

*C. Brooks Wood*, *Stewart Stein*, and *Courtney J. Harrison*, of Stinson Leonard Street LLP, of Kansas City, Missouri, for appellants/cross-appellees.

*Allan V. Hallquist*, of Hallquist Law Firm, LLC, of Kansas City, Missouri, and *Christina M. Pyle*, of Husch Blackwell LLP, of Kansas City, Missouri, for appellees/cross-appellants.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: Ronald D. Hendrix appeals the district court's grant of summary judgment to Jim Sheridan (Sheridan) and Sheridan's Franchise Systems, Inc. (SFS) because he failed to establish how he was damaged by any misuse of the advertising fund

1

operated by SFS and contributed to by the franchises pursuant to the franchise agreement (Agreement). SFS also counterclaimed for loss of revenue because Hendrix purchased supplies from a nonapproved vendor which denied SFS its right to a rebate on custard case products pursuant to the Agreement and other noncustard items. The district court granted SFS judgment for $3,115. As more fully set out below, we find the judgment for $3,115 is not supported by the Agreement and reduce the judgment to $2,108.

In addition, as the case developed, Hendrix chose not to renew his franchise. Pursuant to Paragraph 16D of the Agreement, SFS amended its counterclaim to allege it was entitled to purchase the property (the retail store) at book value. We find the district court correctly applied the Agreement when it granted SFS's request for specific performance. Finally, SFS sought damages for lost profits based on the denial of immediate possession of the retail store. The district court found SFS's claim for lost profits was speculative and denied the claim. We agree. We affirm in part and modify in part.

FACTS

In 2013, Hendrix; BDOE, Inc.; and Hendrix's two other franchises (collectively Hendrix) filed suit against Sheridan; UES, LLC, the company that owned Unforked; and SFCC-Olathe, Inc. alleging fraud, breach of contract, and violations of the Kansas Consumer Protection Act. He later amended the petition to include SFS. Hendrix sought damages in excess of $75,000 and a declaration that he did not have any further obligations under the Agreement. SFS denied Hendrix's allegations and counterclaimed, alleging breach of contract and violations of the Lanham Act (protects trademarks and service marks).

Hendrix owns BDOE, Inc. (BDOE), which operated a Sheridan's Frozen Custard franchise at a location leased by EKH, LLC (EKH). Hendrix also owns EKH. Jim

2

Sheridan is the president and sole owner of SFS, the franchisor for Hendrix's Sheridan's Frozen Custard franchise.

On January 30, 2001, Hendrix and SFS entered into an Agreement for a restaurant on Barry Road in Kansas City, Missouri (the Barry Road location). SFS granted Hendrix a 15-year franchise term with the right to renew the Agreement for an additional 15-year term. When the franchise expired or terminated, SFS had the right to purchase the restaurant pursuant to Paragraph 16D of the Agreement, which stated:

> "If this Agreement expires (without renewal) or is terminated by Franchisor in accordance with its provisions or by Franchisee without cause, then Franchisor has the option, exercisable by giving written notice within thirty (30) days from the date of expiration or termination, to purchase from Franchisee all the tangible assets (including inventory of salable products, materials, supplies, and any and all signs, equipment, leasehold improvements and fixtures owned by Franchisee, but excluding any unamortized portion of the initial franchise fee, cash, short-term investments and accounts receivable) of the Restaurant (collectively, the 'Purchased Assets') and to an assignment of Franchisee's lease for (1) the premises of the Restaurant (or, if an assignment is prohibited, a sublease for the full remaining term and on the same terms and conditions as Franchisee's lease) and (2) any other tangible assets used in connection with the Restaurant. Franchisor has the unrestricted right to assign this option to purchase and assignment of leases separate and apart from the remainder of this Agreement."

The Agreement required Hendrix to pay 1% of his gross monthly sales into an advertising fund. The Agreement also indicated the advertising fund would be accounted for separately, SFS would prepare yearly reports on the advertising fund's operations, and that SFS would not use it

> "to defray any of Franchisor's general operating expenses, except for reasonable salaries, administrative costs and overhead as Franchisor incurs in activities reasonably related to the administration of the Fund and in the preparation of advertising and marketing

3

materials and its programs (including conducting market research, preparing advertising materials and collecting and accounting for contributions to the Fund)."

The Uniform Franchise Offering Circular (UFOC) indicated SFS received a rebate of $.80 per gallon for all frozen custard and could also receive a rebate for dry goods—syrups, sauces, fruits, nuts, and coffee products—of up to 10% of the franchisee's purchase price of these products.

In 2009, SFS switched suppliers from Pacific Valley Dairy to Prairie Farms Dairy (PFD). PFD agreed to pay SFS a rebate of $4 per case of custard ($.80 per gallon of custard) and 7% on all non-custard (or dry goods) purchases. PFD calculated the 7% of non-custard (dry goods) purchase rebate as equal to $2.98 per case of custard, its historical ratio, to avoid costly programming work in figuring the exact amount. PFD rounded it up to $3 per case of custard.

In 2009, Sheridan began to address the declining sales at another store by hiring vendors to renovate the location. He ultimately closed the location and replaced it with Unforked, a new restaurant that was not part of the SFS system. Between 2009 and 2014, SFS spent $405,749 from the advertising fund to develop Unforked. From 2009 to 2014, SFS also paid $63,620 from the advertising fund for SFCC-Olathe's operational expenses and $65,675 to Sheridan's of Omaha "outside of ordinary franchisee disbursements." Between 2003 and 2014, SFS and SFCC-Olathe also deposited funds in the amount of $807,476, generated by the two entities and not through the 1% advertising assessment contributed by franchises.

UES, LLC, filed a motion for summary judgment, which the district court granted. In April 2015, Sheridan, SFS, and SFCC-Olathe filed a motion for summary judgment. It alleged, in part, BDOE lacked standing since it was not a party to the Agreement. The motion for summary judgment also alleged Hendrix had not been damaged by any

4

alleged breach. At argument on the motion for summary judgment, the district court questioned Hendrix's counsel at length regarding how Hendrix was damaged by any alleged breaches involving the advertising fund.

The district court ultimately adopted Sheridan and SFS's proposed uncontroverted facts as its own and granted Sheridan, SFS, and SFCC-Olathe summary judgment on all of Hendrix's claims. Hendrix moved to alter or amend the judgment and the district court denied the motion.

On February 5, 2016—after Hendrix allowed his franchise to expire—SFS filed an amended counterclaim. In addition to its breach of contract and Lanham Act violation claims, SFS sought specific performance of Paragraph 16D of the Agreement. The bench trial occurred June 20-22, 2016, to address SFS's counterclaims:

- Specific performance of Paragraph 16D;
- Lost profits because Hendrix's store was not timely delivered to SFS;
- Lost money on items Hendrix bought from unapproved suppliers and, thus, no rebate was paid to SFS; and
- A Lanham Act violation.

In addition to three days of evidence, the parties admitted voluminous exhibits. At closing arguments, Hendrix argued SFS was not entitled to specific performance of Paragraph 16D of the Agreement because SFS had unclean hands. He also contended BDOE was the franchisee, and if SFS was entitled to specific performance, it should be required to assume BDOE's sublease with EKH. The district court took the case under advisement.

On November 13, 2016, the district court found SFS was not entitled to lost profits damages, but it found SFS was entitled to $3,115 in damages for lost rebates based on

5

Hendrix's purchases of custard and dry goods from unapproved suppliers. The district court also found SFS was entitled to specific performance of Paragraph 16D of the Agreement and was not obligated to assume the sublease between EKH and BDOE because BDOE was not a party to the Agreement. The district court also denied application of the clean hands doctrine because there was no evidence supporting it. The district court found SFS failed to present any evidence supporting its Lanham Act claims and entered judgment in Hendrix's favor on those claims.

Hendrix appealed and SFS cross-appealed.

ANALYSIS

*There was no error to grant SFS summary judgment.*

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of

6

summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013). A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013).

     *BDOE has no standing.*

     SFS asserts BDOE lacked standing to assert a claim for breach of contract because it is not a party to the Agreement. It contends Hendrix is the franchisee and, despite his assertions otherwise, Hendrix did not assign the Agreement to BDOE. Hendrix argues SFS's standing argument is unsupported by the evidence. He contends the evidence clearly establishes he assigned the Agreement to BDOE and SFS can only maintain its argument "by ignoring its own designation of BDOE as a franchisee."

     Standing is a jurisdictional question in which courts determine whether a party has alleged a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf. *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 (2016). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

     To establish standing, a litigant must show he or she has suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct. *Peterson v. Ferrell*, 302 Kan. 99, 103, 349 P.3d 1269 (2015) (quoting *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 [2014]). To be cognizable, an injury must be particularlized; it must affect the plaintiff in a personal and individual way. *Peterson*, 302 Kan. at 103. "A party generally must assert its own legal rights and interests and may not

7

base its claim to relief on the legal rights or interests of third parties." *Ternes v. Galichia*, 297 Kan. 918, 922, 305 P.3d 617 (2013).

On appeal, Hendrix claims SFS's argument ignores "its own designation of BDOE as a franchisee in the UFOC." Hendrix's biography contained in the UFOC stated: "From 2000 to present, Mr. Hendrix has been a partner with BDOE, Inc., which is a franchisee of SFS operating two Sheridan's Frozen Custard Restaurants, with one in Kansas City, Missouri and the other in Chesterfield, Missouri."

However, as SFS indicates—and Hendrix ignores on appeal—Hendrix admitted *he was the franchisee* in his responses to SFS's statement of uncontroverted facts. Further, in response to a subsequent statement of uncontroverted fact, Hendrix admitted BDOE has not executed a written agreement with SFS or Hendrix making it a franchisee of Sheridan's Frozen Custard.

In addition, in response to one of Hendrix's statements of facts, SFS distinguished between operating Hendrix's franchises—which it acknowledged BDOE did— with owning franchise locations. It contended BDOE was not a Sheridan's Frozen Custard franchisee.

Based on the uncontroverted statements of fact, BDOE was not a franchisee of Sheridan's Frozen Custard. As such, since it was not a party to the Agreement, it did not have standing to assert a claim for breach of contract against SFS.

*No Genuine Issues of Material Fact Reflecting SFS Breached the Agreement.*

*Material Breach of Advertising Fund Provisions*

Hendrix argues the district court erred when it granted summary judgment because genuine questions of material fact existed with regard to whether SFS materially breached the advertising fund provisions of the Agreement. He contends he presented substantial evidence showing SFS violated the Agreement's advertising funds covenants by failing to provide annual reports of the advertising fund's operation and accounting for the fund separately. He contends these breaches were material, and he further argues that, if not material as a matter of law, the materiality of the breaches was a jury question.

SFS contends Hendrix raises these issues for the first time on appeal. In Hendrix's reply brief, he argues he "raised on numerous occasions the allegations SFS had failed to separately account for the ad fund and had failed to make annual reports for the fund available to franchisees." He cites to various portions of the record to support this argument. However, these citations fail to support his argument.

Contrary to what Hendrix argues on appeal, he did not raise these arguments in his opposition to SFS's motion for summary judgment or at argument on the motion for summary judgment. Instead, Hendrix explained there were two alleged breaches of contract: excessive rebates and improper use of advertising fund money. He briefly raised these issues during his argument to alter or amend the judgment. In a 50-page transcript, he devoted half a sentence to the argument:

> "'Now, what else do the Franchise Agreements say? They say that it would be separately accounted for, and it will not be treated or used as the general operating fund.
> "'Well, that's exactly how Mr. Sheridan used it.'"

Hendrix also raised these issues at closing arguments at the trial and in his posttrial proposed findings of facts and conclusions of law. However, the trial only concerned SFS's counterclaims; the district court had already granted summary judgment in favor of SFS on Hendrix's breach of contract claims, so the arguments during the trial were too late and irrelevant.

Hendrix failed to properly raise these issues before the trial court. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held litigants who fail to comply with this rule risk a ruling the issue is improperly briefed, and the issue will be deemed waived or abandoned. Thereafter, the Supreme Court held Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Hendrix did not explain why he did not raise these arguments before the district court at summary judgment. He cannot raise them now and has abandoned these arguments.

*Misappropriation of the advertising fund*

Hendrix contends summary judgment on his breach of contract claims was inappropriate because there were genuine issues of material fact concerning whether SFS misappropriated franchisee money from the advertising fund. He contends SFS's expert report was based, in part, on Sheridan's credibility, an issue that cannot be resolved at summary judgment. Hendrix also asserts SFS's expert relied on an overbroad definition of "permitted use" and improperly credited SFS with $103,000 allegedly spent directly by SFS and SFCC-Olathe for advertising.

SFS contends Hendrix does not have standing to argue SFS improperly used advertising fund money. SFS also argues it spent almost $1.4 million on advertising, which is approximately the same amount all the franchisees contributed to the advertising fund pursuant to the Agreement. SFS asserts it did not improperly transfer money contributed by Hendrix or other franchisees out of the advertising fund. Finally, it argues Hendrix did not dispute the advertising fund analysis its expert conducted.

At summary judgment, Hendrix did not argue SFS's expert report was based, even in part, on Sheridan's credibility. Similarly, Hendrix neither argued SFS's expert relied on an overbroad definition of "permitted use," nor argued SFS's expert improperly credited SFS with funds spent by it and SFCC-Olathe for advertising. Hendrix did not raise these issues below and, pursuant to Rule 6.02(a)(5), has not explained why he failed to do so. He cannot raise the issues now and has abandoned this argument.

*Excessive rebates*

In adopting the defendant's findings of uncontroverted facts, the district court found the 2009 rebate was a 7% rebate for dry goods. However, to avoid an accounting issue and based on Sheridan's historical ratio of custard to dry goods purchases, PFD chose to calculate the dry goods rebate as equal to $3 per case of custard.

Without explicitly stating so, Hendrix argues there are genuine issues of material fact regarding whether the 2009 rebate was a rebate on dry goods or an additional, excessive rebate on custard. Hendrix argues summary judgment was inappropriate because SFS breached the Agreement by receiving and concealing excessive rebates. He contends the 2009 rebate on "dry goods" was actually an additional rebate on custard. SFS argues the $3 per case rebate was for dry goods. It contends Hendrix's failure to come forward with any evidence showing the $3 rebate was actually an additional rebate for custard is fatal to his claim.

Contrary to SFS's argument, Hendrix presented evidence to establish a genuine issue of material fact. PFD's corporate representative testified the $3 rebate was for non-custard goods. The rebate began in 2009. However, it was uncontroverted SFS's general ledger did not indicate "dry goods rebate" income until October 2012, about the time Hendrix began questioning the rebate. Similarly, none of PFD's records designate any portion of the rebate as a dry goods rebate. Since neither SFS nor PFD recorded the rebate as a rebate for dry goods for more than three years, it is reasonable to infer the $3 rebate was not actually a rebate for dry goods. Resolving these facts and inferences in favor of Hendrix, the party against whom summary judgment was sought, there is a genuine issue of material fact regarding whether the $3 rebate was a rebate on dry goods or custard.

*Hendrix failed to show damages.*

At summary judgment, SFS argued Hendrix could not prevail on his breach of contract claims because he failed to show any damages caused by the alleged breaches. The district court agreed. On appeal, SFS contends summary judgment was proper because Hendrix failed to show damages. In his reply brief, Hendrix argues he put forth sufficient evidence of damages to controvert SFS's request for summary judgment.

If there is no evidence supporting an essential element of the plaintiff's claims, defendants are entitled to summary judgment. *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 278, 50 P.3d 495 (2002). Damages to the plaintiff caused by the breach of contract is an essential element of breach of contract claims. *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083 (2013).

Here, Hendrix failed to present any evidence he was damaged by SFS's alleged breach on the rebate amount. He was unable to personally attribute any damages to his franchises caused by SFS. Hendrix could not say whether his franchises lost revenue as a

12

result of SFS transferring money out of the advertising fund. Similarly, Hendrix's expert witness did not offer an opinion on whether SFS's administration of the advertising fund damaged Hendrix's franchises and was unwilling or unable to testify as to whether the franchises received the benefit they expected to from the advertising fund. Hendrix's expert witness was also unable to say whether Hendrix was damaged by the $3 rebate SFS claimed was for dry goods, and he did not calculate the amount of damages, if any, resulting from the rebates. Hendrix's expert was unable to say that, even if the $3 rebate was excessive, it resulted in $3 damages to Hendrix.

Hendrix contends the fact he did not state a dollar figure for damages and his expert had not been asked to render an opinion on damages does not foreclose the possibility of damages. He argues the rebate increased the price of the dry goods he purchased. Hendrix points out the supplier indicated he would have paid the $3 per case rebate on dry goods to the franchisees if Sheridan had asked. He contends a jury would be entitled to conclude the supplier "would also be willing to sell the product for that much less." However, this is pure speculation. There is no evidence to support Hendrix's conclusion because, in the portion of the transcript attached to his response to summary judgment, Hendrix did not ask the supplier if he would be willing to sell the product for less. Speculation is insufficient to avoid summary judgment. *Kincaid*, 48 Kan. App. 2d at 656.

Clearly, damages are an essential element for a breach of contract claim and Hendrix failed to point to any evidence alleging how he was specifically damaged by the breach. The district court did not err when it granted summary judgment.

*Paragraph 16D of the Agreement is enforceable.*

Hendrix argues the district court erred when it found SFS was entitled to take over the Barry Road location after the expiration of the Agreement. He contends he

13

sufficiently established equitable defenses that, as a matter of law, barred SFS from exercising its option to purchase the Barry Road location. He also asserts the Agreement prevents the franchisor from exercising its rights under Paragraph 16D of the Agreement if the franchisee had cause to terminate the Agreement. Finally, Hendrix argues SFS waived its right to purchase the Barry Road location when it refused to assume the sublease between BDOE and EKH.

### No Relief Under the Clean Hands Doctrine

Hendrix contends he raised two equitable defenses that, as a matter of law, prevented SFS from exercising its rights to purchase the Barry Road location. He contends the district court incorrectly applied the clean hands doctrine when it concluded evidence of SFS's unclean hands was not sufficiently related to its right to purchase under the Agreement. Hendrix also contends the district court failed to consider a breach of the covenant of good faith and fair dealing which should have precluded SFS from demanding specific performance of the Agreement. These arguments will be addressed in turn.

"The clean hands doctrine is based upon the maxim of equity that he who comes into equity must come with clean hands. The clean hands doctrine in substance provides that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct. It is difficult to formulate a general statement as to what will amount to unclean hands other than to state it is conduct which the court regards as inequitable. Like other doctrines of equity, the clean hands maxim is not a binding rule, but is to be applied in the sound discretion of the court. The clean hands doctrine has been recognized in many Kansas cases. The application of the clean hands doctrine is subject to certain limitations. Conduct which will render a party's hands unclean so as to deny him access to a court of equity must be willful conduct which is fraudulent, illegal or unconscionable. Furthermore the objectionable misconduct must bear an immediate relation to the subject-matter of the suit and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of

14

the transaction. Stated in another way the misconduct which may justify a denial of equitable relief must be related misconduct rather than collateral misconduct arising outside the specific transaction which is the subject-matter of the litigation before the court.

"It should also be emphasized that in applying the clean hands maxim, courts are concerned primarily with their own integrity. The doctrine of unclean hands is derived from the unwillingness of a court to give its peculiar relief to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge. It has nothing to do with the rights or liabilities of the parties. In applying the unclean hands doctrine, courts act for their own protection, and not as a matter of 'defense' to the defendant. [Citations omitted.]" *Green v. Higgins*, 217 Kan. 217, 220-21, 535 P.2d 446 (1975).

We review for an abuse of discretion. See *Green*, 217 Kan. at 220. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.,* 302 Kan. 66, 74, 350 P.3d 1071 (2015).

The district court held there was no evidence supporting the application of the clean hands doctrine. It found SFS's actions relating to the advertising fund and rebates were "incidental and subordinate to the purpose of the franchise relationship." It further found "Hendrix received the benefit of the Barry Road Franchise Agreement for the full term, as he operated a restaurant with steady sales and profits during this period, and therefore it would be inequitable to allow him to retain this consideration and avoid his obligations."

Hendrix argues SFS's conduct goes directly to the subject matter of the suit. He contends the full term of the Agreement was 30 years, since he had the right to renew the Agreement for a second 15-year term. He asserts the only reason he did not renew the Agreement is SFS's misuse of the advertising fund and receipt of improper rebates. In

contrast, SFS argues Hendrix asserted "a litany of unrelated grievances" to defeat his contractual obligations under Paragraph 16D of the Agreement. It contends Hendrix successfully operated the Barry Road location for the full 15-year term of the Agreement and its actions did not defeat the object of the Agreement.

SFS's argument is more persuasive. The Agreement granted Hendrix the right to operate the restaurant for a 15-year term. While Hendrix had the sole right to renew the Agreement for an additional 15-year term, he was not obligated to do so. However, upon nonrenewal, termination, or expiration of the Agreement, the Agreement provided SFS with the exclusive right to purchase the restaurant pursuant to Paragraph 16D.

Nothing prevented Hendrix from renewing the Agreement while maintaining a cause of action against SFS for misuse of the advertising fund and improper rebates. Indeed, Hendrix filed his lawsuit before the expiration of his Agreement. Although there is undisputed evidence Hendrix chose not to renew the Agreement based on SFS's alleged bad faith, there is no evidence SFS interfered with his ability to renew the Agreement. Instead, Hendrix knowingly allowed the Agreement to expire upon the completion of the Agreement's first 15-year term.

At issue was SFS's request for specific performance of Paragraph16D of the Agreement. Any misconduct by SFS was collateral to the issue and does not support Hendrix's clean hands claim. Further, Hendrix received the benefit he bargained for—a 15-year franchise term with the option to renew for another 15-year term. It would be inequitable to allow him to receive the benefit of his bargain, without also holding him to his obligations. As such, the district court did not abuse its discretion in refusing to apply the clean hands doctrine to bar specific performance of Paragraph 16D of the Agreement.

*The Covenant of Good Faith and Fair Dealing provides no relief.*

Hendrix also argues the district court failed to consider the breach of the covenant of good faith and fair dealing; he contends the district court should have found SFS's breach of the covenant of good faith and fair dealing precluded it from demanding specific performance. Hendrix cited breach of the covenant of good faith and fair dealing as an affirmative defense. However, at trial, he failed to raise and argue that SFS's breach of this covenant precluded SFS from demanding performance under Paragraph 16D of the Agreement.

Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403. Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Rule 6.02(a)(5) is strictly enforced. *Godfrey*, 301 Kan. at 1044. Hendrix did not argue SFS breached the covenant of good faith and fair dealing before the district court. Likewise, Hendrix has not complied with Rule 6.02(a)(5) by explaining why this court should consider the argument for the first time on appeal. We deem Hendrix's argument abandoned.

*Termination for cause*

Next, Hendrix argues "[t]he franchise agreement recognizes that the franchisor should not be able to exercise the right under [Paragraph] 16D if it has given the franchisee 'cause' to terminate the agreement." Since this argument requires interpretation of the Agreement, this court has unlimited review. See *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

When interpreting written contracts, the primary rule of construction is to ascertain the parties' intent. If the terms of the contract are unambiguous, the parties' intent is to be

ascertained from the contract language without applying rules of construction. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014); *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

Paragraph 15B of the Agreement discusses the right of the franchisor to terminate the Agreement. It states, in relevant part:

"Franchisor has the right to terminate this Agreement by providing Franchisee thirty (30) days' prior written notice of the termination, said notice stating the reason or reasons for the termination constituting good cause. For purposes of this Agreement, good cause includes any one of the breaches set forth below and any other material breach of the Franchise Agreement or Franchisee's failure to comply substantially with essential and reasonable requirements imposed upon Franchisee by Franchisor. The notice of termination shall give Franchisee thirty (30) days in which to cure the matters giving rise to the good cause, which is the basis of the termination. The termination of the Franchise Agreement is effective upon the expiration of the thirty (30) day notice period and Franchisee's failure to cure any breach or Franchisee's failure to comply substantially with the essential and reasonable requirements imposed upon Franchisee by Franchisor, in accordance with the provisions set forth below during this thirty (30) day notice period. It is a material breach of the Franchise Agreement and constitutes good cause for termination of the Franchise Agreement if Franchisee (or its owners, shareholders, partners or members, if Franchisee is a corporation, partnership or limited liability company) and/or the managers and/or the Restaurant:

. . . .

"(17) Violates any of the covenants contained in the Franchise Agreement;

"(18) Fails to comply with any other provision of this Agreement or any mandatory specification, standard or operating procedure prescribed by Franchisor, including any procedure or requirement set forth in the Operations Manual or any standard relating to uniformity and quality of products, image or customer service or treatment."

Hendrix argues the corollary to Paragraph 15(B) is "the franchisor may not exercise the option if the franchisee terminates the agreement for cause." He contends he clearly had cause to terminate the Agreement since SFS violated numerous provisions and he should not be penalized for seeking a declaratory judgment terminating the Agreement instead of unilaterally terminating the Agreement.

Hendrix's argument is unpersuasive. The language of Paragraph 15B clearly allows a franchisor to terminate a franchisee for cause. There is nothing in Paragraph 15B of the Agreement stating the franchisee has the right to terminate the Agreement for cause. Since the Agreement does not grant the franchisee a right to terminate the Agreement for cause, we find nothing in the Agreement preventing the franchisor, SFS, from exercising its right under Paragraph 16D. This is especially true when, instead of attempting to terminate the Agreement for cause, Hendrix, on his own accord during the litigation, allowed the Agreement to expire.

*BDOE's sublease with EKH is not enforceable.*

The district court held SFS was not obligated to assume the sublease between EKH and BDOE. It found Paragraph 16D of the Agreement applied solely to the ground lease, not the sublease. It found Hendrix's sublease between BDOE and EKH was an attempt to contravene the provisions of the Agreement. The district court also found there was no value attributed to the assignment of a lease between BDOE and EKH. As such, the court found that requiring SFS to assume the sublease would defeat the provisions of Paragraph 16D. Finally, the district court found BDOE did not regularly make the $15,000 sublease payment to EKH.

The district court found Hendrix never expressly or impliedly assigned the Barry Road location Agreement to BDOE. Since Hendrix asserted he assigned the Agreement to BDOE, he had the burden of proof. "The burden of proof is always upon the party

19

asserting an affirmative of an issue and remains with him throughout the trial." *Jensen v. Jensen*, 205 Kan. 465, 467, 470 P.2d 870 (1970). A finding that a party did not meet its burden of proof is a negative factual finding. In reviewing a negative factual finding, the appellate court must consider whether the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision. *Cresto v. Cresto*, 302 Kan. 820, 845, 358 P.3d 831 (2015).

Hendrix incorrectly asserts a substantial competent evidence standard of review applies. However, since the district court made a negative factual finding—Hendrix did not establish he expressly or impliedly assigned the Barry Road location Agreement— this court's review is limited to whether the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration. We find no indication, and Hendrix does not argue, the district court based its decision on bias, passion, or prejudice. Thus, the only question is whether the district court arbitrarily disregarded undisputed evidence. It did not.

Hendrix argues the district court erred when it found SFS was not required to assume BDOE's sublease. Hendrix asserts an assignment of the Agreement from himself to BDOE is "easily implied" because BDOE operated the franchise from day one. He also contends even though no formal notice of assignment exists, SFS treated BDOE as the franchisee and did not object to BDOE as franchisee. Therefore, BDOE is the franchisee, and not Hendrix. Hendrix also argues the district court disregarded rent BDOE paid to EKH from the beginning of the business "in an amount significantly greater than the ground lease."

However, Sheridan testified Hendrix never requested approval to assign the Barry Road location Agreement to BDOE. He indicated SFS never relieved Hendrix of his obligation to obtain written approval before assigning the Agreement. Sheridan suggested he did not realize BDOE operated the store until sometime between 2013 and 2015.

Similarly, despite visiting the store and performing audits many times, Sheridan testified he never saw the sign in the window indicating the franchise was owned and operated by BDOE. In addition, Sheridan explained Hendrix supplied the biography used in the UFOC and that he must not have seen the references to BDOE as franchisee.

While Sheridan's testimony sometimes strained credulity, this court does not pass on the credibility of witnesses. See *Drach v. Bruce*, 281 Kan. 1058, 1067, 136 P.3d 390 (2006). The district court did not arbitrarily disregard undisputed evidence; Sheridan disputed the evidence implying an assignment of the franchise.

Since the district court did not err when it found Hendrix neither expressly nor impliedly assigned the Agreement to BDOE, there was no relationship between BDOE and SFS. Thus, SFS was not required to assume BDOE's sublease with EKH in order to take possession of the Barry Road location; it merely had to assume the ground lease with the shopping center owner.

*The $3,115 judgment is reduced to $2,108.*

A district court's findings of fact are reviewed to determine whether the findings are supported by substantial competent evidence and are sufficient to support the district court's legal conclusions. Substantial competent evidence is legal and relevant evidence a reasonable person might regard as sufficient to support a conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). Furthermore, when evaluating the evidence supporting a district court's factual findings, this court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. *Wolfe Electric, Inc.*, 293 Kan. at 407. Finally, this court presumes that the district court found all the facts necessary to support its judgment. *Hodges*, 288 Kan. at 65.

21

The district court granted judgment for $3,115 on Count I of the amended counterclaim. It found SFS sustained damages totaling $3,115 for lost supplier rebates resulting from Hendrix's purchases from unapproved suppliers. Hendrix argues the district court's judgment is unsound.

Hendrix contends there is no evidence there was an approved supplier, much less one who would have paid SFS a rebate, for many of the purchases. Here, the record reflects most of the non-custard goods purchased from Reinhart Foodservice L.L.C., the unapproved supplier, were for making sandwiches and other meals rather than custard desserts. As Hendrix argues, SFS presented no evidence suggesting an approved distributor sold these items. Additionally, SFS failed to show how, under the Agreement, it would be entitled to a rebate on items not listed in the Agreement. As such, there is not substantial competent evidence supporting the district court's findings with respect to dry goods. However, there is substantial competent evidence supporting the district court's findings regarding custard rebates. Hendrix admitted to purchasing custard from unapproved vendors and the rate is easily calculable based on the cases of custard he purchased. Due to Hendrix's use of unapproved vendors for custard, the calculation reflects SFS lost $2,108 in rebates. The $3,115 judgment is reduced to $2,108.

Hendrix also contends SFS cannot claim a breach because it failed to respond to Hendrix's request to sell sandwiches and related items at his Sheridan's location in Chesterfield. In addition, he argues SFS cannot claim a breach because Hendrix purchased custard from Reinhardt when SFS failed to provide an acceptable supplier. However, Hendrix does not actually argue these points. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). Once again, we find Hendrix has abandoned these points.

22

Finally, Hendrix argues the statute of limitations applies because he last purchased custard for the Barry Road location from an unapproved supplier in July 2008 and SFS first asserted this claim in August 2013. Hendrix acknowledged this issue was not raised during trial, though he asserts it was raised in the answer to the counterclaim. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403. Kansas Supreme Court Rule 6.02(a)(5) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. The Supreme Court has held that Rule 6.02(a)(5) will be strictly enforced. *Godfrey*, 301 Kan. at 1044. Although Hendrix included a statute of limitations affirmative defense before the district court, he never argued the statute of limitations applied. Likewise, although Hendrix acknowledged he did not raise the issue below, Hendrix failed to comply with Rule 6.02(a)(5) and explain why this court should consider the argument for the first time on appeal. Hendrix abandoned his statute of limitations argument.

*SFS was not entitled to lost profits.*

The district court denied SFS's lost profits claim. The district court found the evidence was insufficient and was not reasonably certain to support breach of contract damages in the amount of $93,383.84. SFS argues the district court disregarded undisputed evidence of the breach. It also contends it established lost profits with reasonable certainty and the district court ignored this evidence.

When the district court finds a party did not meet its burden of proof, it is a negative factual finding. In reviewing a negative factual finding, the appellate court must consider whether the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision. *Cresto*, 302 Kan. at 845. Here, SFS only argues the district court ignored undisputed evidence; it does not argue the district court's decision was based on bias, passion, or prejudice.

23

SFS argues Hendrix "refus[ed] to allow SFS to purchase the assets of the Barry Road Franchise and obtain an assignment of the lease for the restaurant premises upon the expiration of the franchise agreement." However, Hendrix did not "refuse" to allow SFS to purchase the Barry Road location assets. Instead, as the district court found, Hendrix indicated he would allow SFS to take possession of the Barry Road location if SFS assumed both the ground lease and BDOE's purported sublease. Ultimately, this is a distinction without a difference. Indisputably, as the district court found, Hendrix breached Paragraph 16D of the Agreement.

SFS argues it undisputedly established the Barry Road location franchise's history of profitability and SFS was reasonably certain of continuing those profits. Hendrix responds that SFS's evidence was insufficient, not reasonably certain, and Sheridan's testimony was speculative. He also contends SFS was not entitled to possession until April 3, 2016, further limiting any damages SFS might be entitled to receive.

The district court did not err when it determined SFS was not entitled to lost profits as a result of Hendrix's failure to comply with the Agreement. Lost profits resulting from a breach of contract may be recovered as damages. The profits must be proved with reasonable certainty and must reasonably be considered within the contemplation of the parties. *CoreFirst Bank & Trust v. JHawker Capital*, 47 Kan. App. 2d 755, 774, 282 P.3d 618 (2012) (quoting *Vickers v. Wichita State University*, 213 Kan. 614, 618, 518 P.2d 512 [1974]). Absolute certainty is not required to prove lost profits but the award for lost profits cannot be based upon speculative or problematic evidence. *CoreFirst*, 47 Kan. App. 2d at 774.

Unquestionably, the Barry Road location franchise was profitable. The Barry Road location averaged sales of approximately $1 million per year from 2013-2015 and each month had little variation from year to year. Sheridan testified he expected the net profit from February through June to be approximately 19% of sales, or $93,383.84.

24

However, Sheridan's testimony regarding lost profits was speculative. Sheridan testified he had not decided whether he would franchise the Barry Road location or if it would remain a company store. He could have put a franchisee in the location in February or March. If SFS installed a franchisee in the Barry Road location, it would not have received 19% as the store's profits; instead, SFS would only receive 4% of the store's gross sales in royalties, approximately $19,660. Furthermore, Sheridan indicated he "backed out" expenses he did not believe he would have if he operated the Barry Road location before determining the 19% profit rate. Sheridan testified he would have only spent half as much—$60,000—on management. He also indicated he would not have to pay the property or health insurance, franchise fee, auto expense, legal expense, entertainment expense, or officers' salaries. However, Sheridan also admitted SFS had many similar expenses: automobile, insurance, legal fees, meals and entertainment, and auto travel. Despite SFS's argument to the contrary, the district court did not arbitrarily disregard undisputed evidence when it determined SFS was not entitled to damages for lost profits. SFS failed to elect how it would operate the Barry Road location and it was not the district court's job to make the election as it considered SFS's burden to establish lost profits with reasonable certainty.

SFS specifically asked the district court for lost profits on operating the store as a SFS-owned facility and not as a franchisee store. At oral argument, SFS raised the contention if it was not entitled to lost profits based on 19%, it was entitled to them at 4% as if the property had been franchised. That is an issue not argued before the district court and cannot be raised for the first time on appeal. See *Wolfe Electric, Inc.*, 293 Kan. at 403. We will not consider SFS's request.

Hendrix also argues SFS was not entitled to possession until April 3, 2016, which would have further limited the amount of profits SFS lost. Similarly, he contends SFS's actions after the district court granted specific performance show the Barry Road location "would not have been operating during the alleged damage period." Hendrix did not raise

either of these arguments before the district court. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403. Kansas Supreme Court Rule 6.02(a)(5) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *Williams*, 298 Kan. at 1085, the Supreme Court held litigants who fail to comply with this rule risk a ruling the issue is improperly briefed. Thereafter, the Supreme Court held Rule 6.02(a)(5) would be strictly enforced. *Godfrey*, 301 Kan. at 1044. Hendrix did not raise these arguments before the district court or comply with Kansas Supreme Court Rule 6.02(a)(5). These arguments are abandoned.

Affirmed in part and modified in part.